IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AZIZ MOULAYE ZOUNDI,<br><br>Petitioner,<br><br>vs.<br><br>DAVID EASTERWOOD, Acting Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, in his official capacity; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; MARKWAYNE MULLIN, Secretary of Homeland Security, in his official capacity; TODD BLANCHE, Attorney General of the United States, in his official capacity; and OFFICER IN CHARGE, Omaha Sub-Office, ICE ERO, in their official capacity;<br><br>Respondents. | **8:26CV661**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus, Filing No. 13. For the reasons set forth herein, the Court denies the Petition.

## I. BACKGROUND

Petitioner is a native and citizen of Burkina Faso who was admitted on an F-1 student visa in August 2012. Filing No. 13 at 4. He became a lawful permanent resident on May 13, 2016, via a marriage petition by his first wife, a United States citizen. Filing No. 13 at 4–6. He is now remarried to a lawful permanent resident and has two United States citizen children. Filing No. 13 at 5. In 2023, Petitioner was convicted of third-

degree sexual assault and sentenced to eighteen months' probation, which he satisfactorily completed. Filing No. 13 at 6.

On August 20, 2026, DHS initiated removal proceedings, alleging as the sole ground of removability that his first marriage, through which he obtained his green card, was a sham. Filing No. 13 at 6; Filing No. 17-1. His removal case remains pending. Filing No. 13 at 6.

ICE took Petitioner into custody. Filing No. 1 at 5. A warrant dated September 22, 2026, authorizing Petitioner's arrest appears in the record. Filing No. 17-2. On October 7, 2026, after a hearing, an immigration judge issued an order granting Petitioner a bond of $15,000. Filing No. 5-1 at 6. The immigration judge concluded a bond was appropriate despite Petitioner's criminal conviction because he presented evidence of rehabilitation and other positive equities. Filing No. 5-1 at 5. Petitioner posted the bond on October 8 and was released. Filing No. 5-1 at 10.

On October 14, 2026, DHS appealed the immigration judge's bond order to the Board of Immigration Appeals ("BIA"). Filing No. 5-1 at 16. That same day, DHS also filed an emergency motion to stay the bond order while the BIA decides the appeal. Filing No. 5-1 at 23. The BIA granted the motion for discretionary stay on October 15, 2026. Filing No. 5-1 at 3. Petitioner filed a motion to vacate the stay. The motion to vacate and the appeal of the bond decision remain pending. Respondents ordered Petitioner to report for an ICE check-in on November 4, 2026, and to bring his passport. Filing No. 5-1 at 14.

Petitioner filed a petition for writ of habeas corpus. Filing No. 1. He also sought a temporary restraining order preventing Respondents from re-arresting him at the

November 4, 2026, check-in. Filing No. 3. Petitioner argued that because he had posted the bond before the stay order was issued, he should not be re-detained The Court denied the motion for temporary restraining order, finding that Petitioner had not established a likelihood of success on the merits because the Immigration and Nationality Act and its accompanying regulations vested the authority to grant a discretionary stay of a bond order with the Board of Immigration Appeals and it properly exercised that authority here. Filing No. 7 at 3–5.

Petitioner reported for the November 4, 2026, ICE check-in and was taken into custody. Filing No. 13 at 9. Respondents have produced a second warrant dated November 4, 2026, authorizing Petitioner's arrest, but Petitioner denies it was provided to him.

Petitioner filed a supplemental motion for temporary restraining order, which the Court construed as a motion to reconsider. Filing No. 8. Petitioner argued that only the district director of DHS had the authority to re-detain him. Filing No. 8. The Court denied the motion to reconsider because the regulation requiring the district director to order re-detention did not apply; the regulation allowing the BIA to stay a bond determination was the applicable rule and provided for the procedure that was followed in the case at hand. Filing No. 12 at 2–3.

Petitioner filed an Amended Petition for Writ of Habeas Corpus.[1] Filing No. 13. He argues the stay of the Immigration Judge's bond order and his re-detention violated his procedural due process rights, his substantive due process rights, and the Immigration and Nationality Act ("INA") and its accompanying regulations. Filing No. 13 at 15–18. He

[1] The parties both treat this as the operative pleading, as will the Court.

seeks declaratory relief, release from detention on his original bond, or a new bond hearing before an immigration judge.

## II. STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

The Board of Immigration Appeals has the authority to stay an Immigration Judge's bond pending appeal under the following regulation:

> ***General discretionary stay authority.*** The Board of Immigration Appeals (Board) has the authority to stay the order of an immigration judge redetermining the conditions of custody of an alien when the Department of Homeland Security appeals the custody decision or on its own motion. DHS is entitled to seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time.

8 C.F.R. § 1003.19(i)(1).

Petitioner's primary argument throughout the case has been that because he posted bond and was released prior to the BIA staying the Immigration Judge's bond order, he cannot now be re-detained by being arrested at his ICE check-in. Although he reframes and repackages them several ways, Petitioner's arguments do not find support in the statutes, regulations, or case law.

First, Petitioner argues there is a factual dispute over whether he was served with a second warrant when he was re-detained at his ICE check-in on November 4, 2026.

He claims to never have received it, while Respondents have produced a copy of it and say it was read to him on November 4. Ultimately, this factual dispute is immaterial. Respondents stated they did not believe they needed a second warrant to arrest him and only served the second warrant out of an abundance of caution.

The Court agrees with Respondents. The effect of a stay is to prevent the stayed order from taking effect and to preserve the status quo prior to that order. That is, in this case, the effect of the stay was to prevent the order allowing Petitioner's release on bond from taking effect and to maintain Petitioner in detention on the previous arrest warrant as he was prior to that order. Therefore, no new warrant was needed to effectuate the status quo; the existing warrant remained operative. Any potential factual dispute over the nature of service of the second warrant is immaterial to the question of whether Petitioner is now properly detained.

Second, Petitioner advances several arguments that are beyond the scope of this Court's narrow authority in this habeas-corpus case, such as asking the Court to determine the BIA did not make an individualized assessment because its order was too brief or requiring a new hearing before an immigration judge to re-present his bond argument. While the Court is sympathetic to the equities of Petitioner and his family's situation, it has been conferred limited jurisdiction only to assess whether Petitioner is lawfully detained. The Court cannot reweigh the evidence to override the BIA's decision to stay the bond; 8 C.F.R. § 1003.19(i)(1) vests the BIA with the authority to act as it did. Nothing requires a more detailed order supporting the BIA's decision to stay the bond as Petitioner seeks, nor does the Court have the authority to undermine the BIA's decision and require a new bond hearing before an immigration judge.

Third, as he did in his motion to reconsider, Petitioner uses language from statutory sections that are inapplicable to the present situation to read addition requirements into the BIA's stay authority. For example, he argues that in order to re-detain him, ICE was required to make a custody determination under 8 C.F.R. § 236.1(c)(8) or DHS should have revoked his release under 8 C.F.R. § 236.1(c)(9). These regulations do not apply to situations where the BIA is the entity ordering the stay of a bond order. In that case, 8 C.F.R. § 1003.19(i)(1) applies and permits the BIA to act as it did here.

The present case is also distinct from the Court's order in *Anicasio v. Kramer*, No. 4:25CV3158, 2025 WL 2374224, at *3 (D. Neb. Aug. 14, 2025), to which Petitioner cites. In that case, the undersigned addressed the constitutionality of 8 C.F.R § 1003.19(i)(2) which permits DHS to invoke an unliteral, automatic stay of an IJ's bond order simply by filing a form. The Court applied the familiar test from the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to conclude the Petitioner's detention violated her procedural due-process rights. First, Petitioner had a significant interest at stake: her liberty. *Id.* Second, the Court found a large risk Petitioner would be erroneously deprived of her liberty interest because the unilateral stay involved no neutral, third-party decision-maker and instead allowed the losing party (DHS) to overcome the IJ's determination. *Id.* Third, the Court found no significant governmental interest, noting DHS could move for a discretionary stay from DHS rather than employing the unliteral, automatic stay. *Id.* at *4. As to substantive due process, the Court found a lack of procedural safeguards and no compelling governmental interest to justify the unilateral deprivation of her liberty. *Id.*

The case at hand does not implicate the same due process concerns as those presented in *Anicasio*. The stay in this case was issued pursuant to the BIA's

discretionary authority, and thus the concerns about the unilateral nature of the automatic stay upon which the Court relied to find procedural and substantive due process violations in *Anicasio* are not present here. In fact, the Court in *Anicasio* pointed to the availability of the discretionary stay as a viable, constitutionally sound alternative to the automatic stay procedure it found problematic in that case. The Court finds the discretionary stay provision does not violate the Petitioner's Due Process rights or violate the INA and its accompanying regulations.

Finally, the cases Petitioner cites in support his argument are also inapposite. For example, in *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 289 (S.D.N.Y. 2025), the Respondents first invoked the automatic stay and then sought a discretionary stay in an attempt to avoid judicial review. The district court found the use of the discretionary stay in that case violated Petitioner's due process rights because it was granted only two hours after being filed and "because the BIA had no record of the IJ's reasoning or any of J.M.P.'s exhibits when it granted the stay, it necessarily could not have conducted an individualized assessment of all the circumstances of the case. The 'discretionary' stay here was essentially automatic in all respects other than its name." *Id.*; *see also Souza v. Hyde*, No. 25-CV-12461-DJC, 2025 WL 2997670, at *4 (D. Mass. Oct. 24, 2025) (holding the lack of information provided to the BIA meant it could not have made a reasoned decision). Therefore, the holdings in *J.M.P.* and *Souza* were limited to the unique factual circumstances presented in those cases, principally the lack of information made available to the BIA prior to its decision to stay the IJ's bond. *See J.M.P.*, 807 F. Supp. at 292 ("[T]he discretionary stay, as it played out here, did not solve this problem [of erroneous deprivation of liberty].").

Here, however, Respondent's motion included the IJ's then-existing bond order,[2] as well as numerous records from Petitioner's underlying immigration and criminal case. Furthermore, the BIA decision came a day later, not mere hours, after the motion and stated it was made "after consideration of all information." Filing No. 17-6 at 2. Unlike in *J.M.P.* v. *Souza*, the circumstances do not permit the Court to speculate the BIA failed to consider the evidence presented to it.

## IV. CONCLUSION

Petitioner has not met his burden to demonstrate he is in custody in violation of the Constitution or federal law. The BIA properly exercised its discretionary authority under 8 C.F.R. § 1003.19(i)(1) to stay the IJ's bond order releasing Petitioner. Based on the stay, Respondents properly took Petitioner back into custody. Accordingly,

IT IS ORDERED:

1. Petitioner's Amended Petition for Writ of Habeas Corpus, Filing No. 13, is denied.
2. The Court will enter a separate judgment.

Dated this 18th day of November, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

[2] The IJ later issued a lengthier bond memorandum on November 4, 2026, that explained the same conclusion in greater detail. Filing No. 14-6. That memorandum had not been filed at the time DHS appealed and sought the stay, and it therefore was unable to include a copy of it with its motion.